UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TONY WEBSTER, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 22-cv-1164 |
| | ) |
| KELLEN WILLIAMS, *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

### ORDER

This matter is before the Court on Defendants' Motions for Summary Judgment regarding exhaustion of administrative remedies. (Docs. 36 and 38). For the reasons stated below, Defendants' Motions for Summary Judgment are GRANTED.

### BACKGROUND

On October 4, 2022, Plaintiff Tony Webster, proceeding *pro se*, filed an Amended Complaint under 42 U.S.C. § 1983 alleging that Defendants Kellen Williams, Justin Gall, Shamaila Gorsi, Hannah Williamson, Carrie Dorberger, and Jessica Flynn violated his constitutional rights while he was detained in the Tazewell County Justice Center. (Doc. 16).

At merit review, the Court found that Plaintiff stated the following claims: 1) Defendant Williams used excessive force when he slammed Plaintiff's thumb in the chuckhole of his cell door on May 9, 2021, in violation of the Fourteenth Amendment; 2) Defendants Williams and Gall refused medical care for Plaintiff's serious thumb injury on May 9, 2021, in violation of the Fourteenth Amendment; 3) Defendants Gorsi, Williamson, Dorberger, and Flynn ("the Healthcare Defendants") violated Plaintiff's Fourteenth Amendment rights when they either delayed or denied medical care for his thumb injury; and (4) the Healthcare Defendants allegedly committed the state law tort of medical malpractice. (Text Order 10/4/2022).

1

Defendants filed Motions for Summary Judgment asserting that Plaintiff failed to exhaust his administrative remedies because he did not properly utilize the Jail's grievance process. (Docs. 36 and 38). Plaintiff filed a response (Doc. 47), and Defendants filed replies (Docs. 51 and 52).

## MATERIAL FACTS

At all times relevant to this case, Plaintiff was detained or otherwise incarcerated in the Tazewell County Justice Center ("Jail"). Defendants Williams and Gall were Correctional Officers at the Jail. Defendants Gorsi, Williamson, Dorberger, and Flynn were employed by Wellpath, LLC and worked in the Jail's Health Services Unit.

Plaintiff was booked into the Jail multiple times, including November 16, 2009, October 30, 2011, February 3, 2014, September 27, 2017, October 3, 2019, July 9, 2020, September 13, 2020, and December 13, 2020. (Doc. 36-2 at ¶ 2). Plaintiff was released from his December 13, 2020, detention and transferred to Woodford County Jail on January 30, 2023. *Id*. at ¶ 3.

After a detainee is booked into the Jail and moved from a holding cell into general population, the detainee receives a copy of the Tazewell County Jail Detainee Rules and Regulations Handbook ("Handbook") containing the Jail's policies and procedures. *Id*. at ¶¶ 4-5. The Handbook outlines the Jail's grievance procedure – a procedure that a detainee must follow to make a complaint, file a grievance, and appeal any grievance response. *Id*. at ¶ 7; Doc. 36-1 at pp. 17-18.

The detainee grievance procedure states:

> You can make a grievance about most things that involve you. There are some things that you do **NOT** have the right to complain about. These things are but not limited to:
> 1. The TCJC Facility schedules and rules.
> 2. The TCJC Facility security measures.
> 3. The cell to which you are assigned.
> 4. The General Population Pod to which you are assigned.
> 5. The decision of the Discipline Hearing Board. (See Detainee Discipline)

2

> TCJC staff will not retaliate if you make a grievance. You will receive a written answer to any written grievance you make. You will receive an answer to a written grievance within fifteen (15) business days, unless we tell you we need more time.
>
> To make a grievance you must obtain a Detainee Request Form from the Pod Officer. To make a **written** complaint, you **must** do these things:
>
> 1. The grievance **must** involve you.
> 2. The grievance must be made within forty-eight (48) hours from the time the alleged grievance happened. If forty-eight (48) hours pass, you can still make a grievance, if you can give a good reason why you waited so long.
> 3. You must write or print your complaint neatly so that the TCJC Facility staff is able to read the complaint.
> 4. You should write your story about what happened, the reason you are grieving it, the date and time it happened, and the name of any witness(es).
> 5. The Detainee Request Form and any separate paper on which you have written your grievance, is to be given to the Pod Officer. The Pod Officer will attempt to solve your problem.
> 6. If the Pod Officer cannot resolve the grievance, the Pod Officer will sign the grievance and forward the grievance to Shift Command.
>
> When you receive an answer to your grievance you can make one (1) appeal. The appeal will be handled by the TCJC Facility staff member who has a higher rank than the TCJC Facility staff member from whom you received your answer. To make an Appeal you **MUST** do these things:
>
> 1. The appeal must be made within forty-eight (48) hours from the time you received an answer.
> 2. You must check the appropriate box on the Detainee Request Form. If needed you may have more than one to write out your whole appeal.
> 3. The appeal, the original grievance you made, and the answer to your grievance is to be given to the Pod Officer. The Pod Officer will send it to the TCJC Facility staff member who will handle the appeal.
> 4. You will receive an answer to your appeal within fifteen (15) business days, unless we tell you we need more time.

(Doc. 36-1 at pp. 17-18).

According to the Handbook, a detainee is required to file a grievance within forty-eight hours of when the incident being grieved occurred using a Detainee Request Form obtained from a Correctional Officer. *Id.*; Doc. 36-2 at ¶¶ 7-8.

Detainee Request Forms consist of three self-carboned pages. *Id*. at ¶ 9. Page 1 is white; page 2 is yellow; and page 3 is pink. *Id.* When a detainee hands a completed Detainee Request Form to an Officer, the Officer signs the white copy and returns the pink copy of the detainee. *Id.* If necessary, the Shift Supervisor reviews, answers, and signs the form. The yellow copy is returned to the detainee, and the white copy is placed in the detainee's file. *Id.*

Detainee Request Forms regarding medical care are sent to the Jail's medical department for review and response. *Id.* The white copy is filed in the detainee's medical records, and the yellow copy is returned to the detainee. *Id*.

Detainee Request Forms regarding nonmedical issues are reviewed and responded to by the Officer and, if necessary, the Shift Supervisor. *Id.* The yellow copy is returned to the detainee, and the white copy is filed in the detainee's Classification file. *Id*.

If a detainee is unsatisfied with the response to a grievance, the detainee can file a grievance appeal within forty-eight hours of receiving the response. (Doc. 36-1 at p. 18). To file a grievance appeal, a detainee must check the appropriate box for appeals on the Detainee Request Form. *Id.*

At the beginning of his December 13, 2020, detention, Plaintiff received a copy of the Handbook. (Doc. 36-2 at ¶ 5). The Handbook Plaintiff originally received was revised in September 2022, and all detainees were provided a copy of the updated Handbook. *Id*. at ¶ 6.

According to a Declaration from Jail Superintendent Stacey Kempf, Plaintiff's Jail records contain 105 Detainee Request Forms dated May 9, 2021 through November 3, 2022, regarding a variety of issues. (Doc. 36-2 at ¶ 11; Docs. 36-3, 36-4, 36-5, 36-6, 36-7, and 36-8).

Some of Plaintiff's Detainee Request Forms relate to the events of May 9, 2021, or to his medical care for the injury he allegedly sustained; however, there is no evidence that Plaintiff appealed any of his relevant grievances.

On May 9, 2021, Plaintiff submitted a Detainee Request Form stating that a Correctional Officer injured his finger and Defendant Gall would not call a nurse. (Doc. 36-9 at p. 34). The date this form was reviewed by a member of the correctional staff is illegible. *Id.*

On May 10, 2021, Plaintiff submitted a Detainee Request Form stating that he had seen the nurse and wanted an x-ray of his hand and stitches in his thumb. (Doc. 36-2 at ¶ 12; Doc. 36-6 at p. 8). A member of the correctional staff reviewed the form on May 10, 2021. *Id.*

Plaintiff submitted three Detainee Request Forms dated May 12, 2021. First, Plaintiff stated that he told a Correctional Officer his right thumb was broken and needed stitches, that the Officer told him to write a sick call form, and that he told the Officer he had done so. (Doc. 36-2 at ¶ 13; Doc. 36-6 at p. 7). The form is dated May 12, 2021; however, the signatures of the Officers who reviewed the form are dated May 10, 2021 and May 11, 2021. *Id.*

In his second Detainee Request Form dated May 12, 2021, Plaintiff stated Defendant Williams injured his thumb. *Id.* at p. 6. The form contains review signatures dated May 12, 2021 and May 14, 2021. *Id.*

In the third Detainee Request Form dated May 12, 2021, Plaintiff stated Defendant Williams injured his hand, and the nurse and doctor denied him medical care. *Id.* at p. 5. The form contains a review signature dated May 12, 2021. *Id.*

On May 15, 2021, Plaintiff submitted a Detainee Request Form stating that "the first shift C/O" had "slammed the chuck hole shut inadvertently" on his thumb on May 9, 2021, and that unnamed staff refused him medical care. *Id.* at p. 2. The form contains review signatures dated May 16, 2021 and May 24, 2021. *Id.*

On May 17, 2021, Plaintiff submitted a Detainee Request Form regarding "the medical staff." *Id.* at p. 1. Neither Defendants Williams and Gall, nor the events of May 9, 2021, are mentioned. *Id*. The form contains a review signature dated May 17, 2021. *Id*.

On May 18, 2021, Plaintiff submitted a Detainee Request Form stating that he had been denied medical care, his thumb was broken, and a Correctional Officer injured him. (Doc. 36-5 at pp. 28-29). The form contains a review signature dated May 19, 2021. *Id*.

On May 22, 2021, Plaintiff submitted a Detainee Request Form stating that he was being denied medical care for an injury that occurred on May 9, 2021. *Id.* at p. 27. The form contains a review signature dated May 22, 2021. *Id*.

On May 27, 2021, Plaintiff submitted a Detainee Request Form naming Defendant Williams. (Doc. 36-9 at p. 45). The form contains review signatures dated May 27, 2021 and May 28, 2021. *Id.*

On June 24, 2021, Plaintiff submitted a Detainee Request Form stating that he was in pain and needed an x-ray of his thumb. *Id.* at p. 38. The form was reviewed the same day. *Id.*

On October 16, 2021, Plaintiff submitted a Detainee Request Form[1] stating that Defendant Williams slammed him thumb in a "chuckhole" on May 9, 2021, and that he has been denied medical treatment. (Doc. 36-4 at p. 33). This form contains a review signature dated October 18, 2021. *Id*.

Plaintiff did not submit a Detainee Request Form marked as "Appeal of Grievance" within forty-eight hours of receiving responses to his relevant grievances. (Doc. 36-4 at p. 33; Doc. 36-5 at pp. 27-29; Doc. 36-6 at pp. 1-2, 5-8; Doc. 36-9 at pp. 34, 38, 45).

---

[1] The Detainee Request Form is dated both October 16, 2021 and October 18, 2021.

Plaintiff's file contains only three Detainee Request Forms marked as "Appeal of Grievance" dated May 8, 2022, August 25, 2022, and August 27, 2022, but these grievances are unrelated to the allegations in this case. (*Id.* at ¶ 17; Doc. 36-3 at pp. 8, 10, 36). Plaintiff's grievance appeal from May 8, 2022, pertains to an allegation that Nurse Hannah improperly deducted money from his account for medication. (Doc. 36-3 at p. 36). Plaintiff's grievance appeal from August 25, 2022, relates to purchasing items from commissary. *Id.* at p. 10. Plaintiff's grievance appeal from August 27, 2022, pertains to a complaint that a Correctional Officer responded to a grievance Plaintiff filed about purchasing items from commissary. (*Id.* at p. 8).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's "favor toward the nonmoving party does not extend to drawing 'inferences that are only supported by speculation or conjecture.'" *Id.* In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001)

7

(internal citation omitted). Plaintiff is the non-moving party, and the evidence and all reasonable inferences are viewed in the light most favorable to him. *Anderson*, 477 U.S. at 255.

## EXHAUSTION STANDARD

The Prison Litigation Reform Act ("PLRA") prohibits prisoners from filing lawsuits pursuant to § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) (pretrial detainees are "prisoners" for purposes of the PLRA). Exhaustion of administrative remedies under § 1997e is a condition precedent to suit, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 2009), and applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies is an affirmative defense; the defendants have the burden of proving the detainee had available remedies he did not utilize. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 665 (7th Cir. 2004). Therefore, a lawsuit filed by a detainee before he exhausted his administrative remedies must be dismissed because the court lacks the discretion to resolve the claim on the merits. *Perez*, 182 F.3d at 535; *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005); *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005). Unless a detainee completes the administrative process by following the rules the jail has established, exhaustion has not occurred. *Pozo*, 286 F.3d at 1023. Exhaustion means completing all stages of the process in a timely and proper manner. *Id*. at 1024.

An inmate cannot satisfy the requirements under § 1997e by filing an untimely or otherwise procedurally defective grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

## ANALYSIS

Defendants argue Plaintiff did not exhaust his administrative remedies because he failed to properly utilize the Jail's grievance process. Although some of Plaintiff's Detainee Request Forms were related to the allegations in his Complaint, Plaintiff did not appeal any of the relevant grievances. Plaintiff only appealed three of his Detainee Request Forms, but these forms were unrelated to this case.

Plaintiff argues he was unable to exhaust his administrative remedies because he feared Defendants Williams and Gall would retaliate against him if he submitted grievances or appeals regarding the incident on May 9, 2021, because they told him not to put their names in a grievance on May 12, 2021. (Doc. 47 at pp. 1-2). Plaintiff also states that he asked an Officer for a form to file an appeal on May 20, 2021, but Defendant Gall told the Officer not to give Plaintiff a form. *Id.* at 2.

The evidence shows that the grievance process was available to Plaintiff, and he was familiar with utilizing it. Plaintiff submitted more than one hundred Detainee Request Forms between May 9, 2021 and November 3, 2022. Despite allegedly being threatened by Defendants Williams and Gall on May 12, 2021, Plaintiff submitted three Detainee Request Forms pertaining to his injury and need for medical care the same day. (Doc. 36-6 at 5-7). Plaintiff also submitted numerous Detainee Request Forms after May 12, 2021, explicitly complaining about Defendant Williams and the medical staff on May 15, 17, 18, 22, 23, 27, 2021, June 24, 2021, and October 16, 2021. Plaintiff's grievance records illustrate that the alleged fear of retaliation did not dissuade or prevent him from submitting numerous grievances.

Plaintiff was also familiar with the grievance appeal process; he submitted three appeals on May 8, 2022, August 25, 2022, and August 27, 2022, which were unrelated to the claims in this case. (Doc. 36-3 at pp. 8, 10, 36). According to the Handbook, if a detainee is unsatisfied with the response to a grievance, the detainee can file a grievance appeal. To file an appeal, a detainee **"MUST"** check the appropriate box on the Detainee Request Form. (Doc. 36-1 at p. 18) (emphasis in original). Plaintiff did not appeal any of his grievances regarding the incident on May 9, 2021 or his medical treatment, as none of the relevant grievances were marked "Appeal of Grievance."

The Court finds that Plaintiff did not exhaust the administrative remedies available to him prior to filing this lawsuit. *See Pozo*, 286 F.3d at 1025 (to exhaust administrative remedies, detainees must file complaints and appeals in the place and, at the time, in the manner that the jail's administrative rules require; substantial compliance does not satisfy the PLRA). Defendants' Motions for Summary Judgment are granted. Plaintiff's claims under § 1983 are dismissed without prejudice for failure to exhaust his administrative remedies.

Having dismissed all of Plaintiff's claims under § 1983, this Court declines to exercise supplemental jurisdiction over his remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's claim that the Healthcare Defendants were negligent and committed the state law tort of medical malpractice is dismissed without prejudice. *See Reveles v. Carr*, No. 22-CV-90-BBC, 2022 WL 1773486, at *9 (W.D. Wis. June 1, 2022).

**IT IS THEREFORE ORDERED:**

**1)     Defendants Justin Gall and Kellen Williams' Motion for Summary Judgment [36] and Defendants Carrie Dorberger, Jessica Flynn, Shamaila Gorsi, and Hannah Williamson's Motion for Summary Judgment [38] are GRANTED based on Plaintiff's failure to exhaust his administrative remedies. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case.**

**2)** **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a). A motion for leave to appeal** *in forma pauperis* **must set forth the issues Plaintiff plans to present on appeal.** *See* **FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.**

ENTERED:  11/6/2023

                                                       s/ James E. Shadid
                                                       James E. Shadid
                                                       United States District Judge